# UNITED STATES DISTRICT COURT
for the
**Western District of Kentucky**
**Louisville Division**

| | | |
|---|---|---|
| Sarah Vittitow<br>　　*Plaintiff*<br><br>v.<br><br>Equifax Information Services, LLC<br>　　*Defendant*<br>Serve:<br>　　Corporation Service Company<br>　　421 West Main Street<br>　　Frankfort, KY 40601<br><br>Trans Union, LLC<br>　　*Defendant*<br>Serve:<br>　　The Prentice Hall Corp. System<br>　　421 West Main Street<br>　　Frankfort, KY 40601<br><br>Louisville Recovery Service, LLC<br>　　*Defendant*<br>Serve:<br>　　Cindy Habeeb<br>　　1939 Goldsmith Lane, Suite 135<br>　　Louisville, KY 40218 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:17-CV-459-DJH |

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

　　1.　　This is a complaint for damages for Defendants Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union")'s violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and Louisville Recovery Services, LLC violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.C.S. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Bullitt County, Ky., which is located within this District.

## PARTIES

3. Plaintiff Sarah Vittitow is a natural person who resides in Bullitt County, Ky. Ms. Vittitow is a "consumer" within the meaning of the FCRA and FDCPA.

4. Defendant Equifax Information Services, LLC is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax has registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

5. Defendant Trans Union, LLC is a foreign limited liability company, with its principal place of business located at 555 West Adams, Chicago, IL 60661. Trans Union has registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

6. Defendant Louisville Recovery Services, LLC ("LRS") is a third-party debt collector whose principal office is located at 3207 Oriole Drive, Louisville, KY 40213.

7. LRS's principal purpose is the collection of debts. LRS regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). LRS is also a "furnisher" of information within the meaning of the FCRA.

## STATEMENT OF FACTS

**I.     Facts Relating to Louisville Recovery Service, LLC and Trans Union, LLC**

8. Like many of her fellow Americans, Ms. Vittitow is keenly aware of the importance of his credit score.

9. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and

is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."

But even if you're not in the market for a loan, good credit can have a major impact, Weston says.

"Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.

Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.

Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

10. In an effort to improve her credit score and rating, Ms. Vittitow regularly reviews her credit reports.

11. Ms. Vittitow discovered three collection accounts furnished by one PSI Louisville, Inc. ("PSI") in connection with alleged medical debts.

12. The three PSI medical debts at issue were each incurred for personal, family, or household, which makes all three PSI debts a "debt" within the meaning of the FDCPA.

13. The first PSI debt had a last-reported date of August 19, 2014 with a current balance of $372 and original balance of $363.

14. Upon information and belief, the $9.00 increase in the balance due on the debt constitutes the addition of fees and/or interest that neither PSI nor the original creditor had any legal right to recover from Ms. Vittitow.

15. The second PSI debt had a last-reported date of April 28, 2014 with a current balance of $306 and original balance of $241.

---

[1]. http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

16. Upon information and belief, the $65.00 increase in the balance due on the debt constitutes the addition of fees and/or interest that neither PSI nor the original creditor had any legal right to recover from Ms. Vittitow.

17. The third PSI debt also had a last-reported date of April 28, 2014 with a current balance of $284 and original balance of $219.

18. Upon information and belief, the $65.00 increase in the balance due on the debt constitutes the addition of fees and/or interest that neither PSI nor the original creditor had any legal right to recover from Ms. Vittitow.

19. PSI is a defunct legal entity without power to do business in Kentucky or anywhere else in the country.

20. PSI filed for Chapter 7 Bankruptcy relief on May 15, 2015 in Case No. 15-31649-jal.

21. The Bankruptcy Court entered a final order and decree in the case on November 18, 2015, which officially ended PSI as an ongoing business.

22. Further, the Kentucky Secretary of State administratively dissolved PSI as a legal entity on October 1, 2016.

23. So, the information concerning PSI on Ms. Vittitow's credit report is inaccurate and false, because PSI cannot be assigned the Physicians in Emergency Medicine debts for collection.

24. Upon information and belief, LRS furnished the negative credit information on Ms. Vittitow's Trans Union credit report, falsely identifying PSI as the furnisher/collection agency.

25. LRS violated the FDCPA by reporting false credit information about Ms. Vittitow.

26. LRS violated the FDCPA by misrepresenting the amount and legal status of medical debts on Ms. Vittitow's consumer credit report and by adding interest and fees to the medical debts that LRS had no legal right to recover from Ms. Vittitow.

27. LRS violated the FDCPA by using the name of a business, company, or organization other than LRS's true name.

28. By using PSI as the vehicle to furnish negative credit information to one or more consumer reporting agencies, LRS knowingly and intentionally concealed its true identity from consumers such as Ms. Vittitow.

29. Ms. Vittitow did not learn that LRS was actively hiding behind PSI on her credit report until May 2017.

30. Trans Union has been on actual notice the PSI is a bankrupt and defunct legal entity since at least December 2015.

31. Despite this actual notice, Trans Union continues to publish consumer credit reports that include negative credit information purportedly furnished by PSI.

32. Knowingly allowing tradelines furnished by PSI and/or LRS through a PSI subscriber agreement to remain on consumer credit reports like Ms. Vittitow's is a breach of Trans Union's duty to of employ procedures designed to maintain the maximum possible accuracy of credit reports it publishes to its users and subscribers.

II. **Facts Relating Equifax Information Services, LLC, Trans Union, LLC, and Erroneous Public-Record Information Appearing on Ms. Vittitow's Consumer Credit Reports**

33. The Brook Hospital K.M.I. ("Brook") sued Ms. Vittitow on April 15, 2016 in Bullitt District Court in order to collect a medical debt from her.

34. Ms. Vittitow entered into an agreed judgment with Brook, which was filed of record on June 10, 2016.

35. Ms. Vittitow paid off the agreed judgment in full.

36. The Brook filed a notice of satisfaction of record in the Bullitt District Court on April 4, 2017.

37. The filed notice of satisfaction is a public record that is freely and readily available to all.

38. On or about May 26, 2017, Ms. Vittitow obtained copies of her consumer credit report from Defendants Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union").

39. Ms. Vittitow's May 26th consumer credit reports from Equifax and Trans Union each inaccurately stated, in the section of the report devoted to information concerning public records, that the Brook judgment remained unpaid and unsatisfied with positive amounts still due and owing.

40. On or about July 5, 2017, Ms. Vittitow again obtained copies of her consumer credit report from Defendants Equifax and Trans Union.

41. Ms. Vittitow's July 5th consumer credit reports from Equifax and Trans Union each inaccurately stated, in the section of the report devoted to information concerning public records, that the Brook judgment remained unpaid and unsatisfied with positive amounts still due and owing.

42. Ms. Vittitow was denied credit and financing because of inaccurate credit information published by Experian in connection with the Brook judgment. In particular, Equifax and Trans Union each falsely and incorrectly published to one or more of its subscribers and users of its consumer reports that the Brook judgment not satisfied and that a positive balance was still owed on the judgment.

43. Even though the Brook judgment had been satisfied, Equifax and Trans Union negligently or willfully failed to update the information it reported on Ms. Vittitow's consumer credit reports, to accurately reflect that the Brook judgment had been satisfied.

44. As a result of the inaccurate credit information reported by Equifax and Trans Union due to its negligent or willful failure to maintain reasonable procedures to assure maximum possible accuracy, Ms. Vittitow was denied credit and financing, or received credit on less favorable terms, because of inaccurate credit information published by Equifax and Trans Union in connection with the Brook judgment. In particular, Equifax and Trans Union falsely and incorrectly published to one or more of its subscribers and users of its consumer reports that the Brook judgment was unpaid and unsatisfied and that positive balances was still owed on Brook judgment.

45. Equifax and Trans Union's reporting of the Brook judgment was unpaid and unsatisfied was inaccurate and violated 15 U.S.C. § 1681e(b). Equifax and Trans Union each failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Vittitow' credit reports and credit files it publishes and maintains concerning Ms. Vittitow. If Equifax and Trans Union each had reasonable procedures in place, Equifax and Trans Union would have discovered that the Brook had filed a satisfaction of judgment *before* publishing Ms. Vittitow' credit report to its subscribers and users of its consumer reports.

46. Equifax and Trans Union each failed to maintain reasonable procedures designed to avoid violations of the FCRA in connection with publishing credit information concerning Ms. Vittitow and the Brook judgment.

47. Upon information and belief, Equifax and Trans Union each have a routine, systematic procedure to carefully gather and report derogatory judgments and judgment liens entered against consumers in the consumer reports that they furnish to users of their consumer reports, but neither has such routine, systematic procedures to gather and report information from the same courts for judgments and judgment liens when they become paid and released and to assure maximum possible accuracy.

48. Equifax and Trans Union willfully or negligently failed to use and maintain the necessary procedures to assure maximum possible accuracy of the public-record information section of Ms. Vittitow's consumer credit reports that each published to third-party users and subscribers. Consequently, Equifax and Trans Union each reported materially false and inaccurate negative credit information concerning Ms. Vittitow' paid and satisfied the Brook judgment, *i.e.* each falsely reported that the Brook judgment remained unsatisfied and due and owing *after* entry of a satisfaction of judgment.

49. Equifax and Trans Union's reporting of the Brook judgment as unsatisfied was inaccurate in violation of the FCRA, 15 U.S.C. § 1681e(b). Equifax and Trans Union each failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Vittitow's credit reports and credit files each publishes and maintains concerning Ms. Vittitow. If Equifax and Trans Union each had reasonable procedures in place, both Equifax would have discovered that the Brook had filed a notice of satisfaction *before* publishing Ms. Vittitow's credit report to its subscribers and users of each's consumer reports.

50. Equifax and Trans Union each failed to maintain reasonable procedures designed to avoid violations of the FCRA in connection with publishing credit information concerning Ms. Vittitow and the satisfied Brook judgment.

## CLAIMS FOR RELIEF

I. **Claims against Louisville Recovery Service, LLC**

51. The above-described actions of Louisville Recovery Service, LLC ("LRS") violated the FDCPA, included but not limited to 15 U.S.C. § 1692e, 15 U.S.C. § 1692f and one or more subsections of each statute.

II. **Claims against Equifax Information Services, LLC**

52. Plaintiff Sarah Vittitow restates each of the allegations in the preceding paragraphs as if fully set forth herein.

53. Equifax Information Services, LLC ("Equifax") violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Vittitow and the satisfied Brook judgment.

54. Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Equifax was on clear notice that the failure to update public records with respect to judgments was problematic for Equifax. Other lawsuits raising the same issue has been filed against Equifax in this and other jurisdictions for the same failure.

55. In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## II. Claims against Trans Union, LLC

56. Plaintiff Sarah Vittitow restates each of the allegations in the preceding paragraphs as if fully set forth herein.

57. Trans Union, LLC ("Trans Union") violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Ms. Vittitow and the satisfied Brook judgment and the PSI tradeline.

58. Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Trans Union was on clear notice that the failure to update public records with respect to judgments was problematic for Trans Union. Other lawsuits raising the same issue has been filed against Trans Union in this and other jurisdictions for the same failure.

59. In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sarah Vittitow requests that the Court grant her the following relief:

1. Award Plaintiff the maximum amount of statutory damages against each Defendant;

2. Award Plaintiff actual damages against each Defendant;

4. Award Plaintiff punitive damages against each Equifax and Trans Union for their willful violations of the FCRA as alleged *supra* pursuant to 15 U.S.C. § 1681n;

5. Award Plaintiff Attorney's fees, litigation expenses and costs;

6. A trial by jury; and

7. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James Hays Lawson
**James Hays Lawson**
*Lawson at Law, PLLC*

        115 S. Sherrin Avenue, Suite 4
        Louisville, KY 40207
        Tel:   (502) 371-2179
        Fax:  (502) 257-7309
        james@kyconsumerlaw.com